**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

| | |
|---|---|
| KILPATRICK LIFE INSURANCE COMPANY and FIRST LOUISIANA BANK | CIVIL ACTION NO. 07-1742 |
| VERSUS | DISTRICT JUDGE HICKS |
| CADDO PARISH SHERIFF STEPHEN W. PRATOR, ET AL. | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

Before this Court is a Motion for Summary Judgement [Record Document 38], filed on behalf of Plaintiffs, First Louisiana Bank and Kilpatrick Life Insurance Company. Plaintiffs seek annulment of tax sales of certain properties and all subsequent sales of those properties on the grounds that the plaintiffs, who were the mortgagees of the properties at the time of the sales, did not receive actual notice of the tax sales in violation of the Due Process Clause of the Fourteenth Amendment.

**I.   FACTUAL BACKGROUND**

Prior to December 12, 2006, Trinity One Community Development Corporation ("Trinity One") was the owner of the following immoveable property and all improvements thereon:

1. A portion of Lot 7, Section 5, approximately 12.01 acres, River Parkway Subdivision, Shreveport, Caddo Parish, Louisiana, per assessor's plat 181437-126-37, more fully described in Exhibit 1 to Plaintiff's Complaint ("Tract 1").

2. Lots 1 through 6 and a portion of Lot 7, Section 5, Shreveport, Caddo Parish, Louisiana, approximately 38.26 acres, River Parkway Subdivision, per assessor's plat 181437-126-37, more fully described in Exhibit 2 to Plaintiff's Complaint ("Tract 2").

The following outline of events demonstrates the acquisition of Tract 1 and Tract 2

by Trinity One and the subsequent mortgages acquired by First Louisiana Bank ("First Louisiana") and Kilpatrick Life Insurance Company ("Kilpatrick"):

| | |
|---|---|
| February 28, 2003 | Trinity One acquired Title to Tract 1 from Parkway Enterprise Partnership ("PEP") pursuant to a Cash Sale Deed. |
| | Trinity One executed a Multiple Indebtedness Mortgage on Tract 1 in favor of First Louisiana. |
| March 3, 2003 | The Cash Sale Deed was filed of record in the Conveyance Records of Caddo Parish, Louisiana at Conveyance Book 3587, Page 551, under Registry Number 1844573. |
| | The Multiple Indebtedness Mortgage was filed of record in the Mortgage Records of Caddo Parish, Louisiana, at Mortgage Book 3512, Page 358, under Registry Number 1844576. |
| April 30, 2004 | Trinity One acquired Tract 2 from PEP pursuant to a Cash Deed Sale, filed of record in the Conveyance Records of Caddo Parish, Louisiana at Conveyance Book 3674, Page 489, under Registry Number 1914342.[1] |
| | Trinity One executed a mortgage in favor of Kilpatrick Life Insurance Company ("Kilpatrick"), filed of record in the Mortgage records of Caddo Parish, Louisiana, under Registry No. 1914344, at Mortgage Book 3829, Page 749.[2] |
| December 12, 2006 | Trinity One executed a dation en paiement on Tract 1 in favor of Kilpatrick. |
| December 29, 2006 | The dation en paiement was filed of record in the Conveyance Records of Caddo Parish, Louisiana at Conveyance Book 3910, Page 255, under Registry No. 2073592. |

---

[1]The Cash Sale Deed was corrected by an Act of Correction dated February 15, 2005, filed and recorded the same day in Conveyance Book 3741, Page 496, under Registry No. 1960031.

[2]The Mortgage was amended by an Act of Correction dated February 15, 2005, filed of record in the Mortgage Records of Caddo Parish Louisiana under Registry No. 1960032, at Mortgage Book 4008, Page 458.

Trinity One failed to pay property taxes on Tract 1 for 2003 and 2004, as well as the property taxes due on Tract 2 for 2004. In 2005, Trinity One received notice stating that the taxes were delinquent and that failure to pay the taxes due would result in the sale of the property according to law. When Trinity One failed to pay the past due taxes, notice of the tax sales were published in the Shreveport Times, Caddo Citizen, and Shreveport Sun, and Tracts 1 and 2 were sold at parish and city tax sales for the amount of unpaid property taxes, together with interest, advertising expenses, and costs.[3] See Record Document 38, Exs. 4, 6, 8-28l; Record Document 55, Ex. 1. Following the tax sales, notice was sent to Trinity One advising that the properties had been sold and providing the information for redeeming the property. Trinity One made no attempts to redeem the property. Subsequent parish and city tax sales occurred in 2006 and 2007 wherein certain defendants purchased Tract 1 and various lots on Tract 2.[4] None of these tax sales have been redeemed.

Although Trinity One received notice of the delinquencies and potential tax sales, neither First Louisiana nor Kilpatrick received actual notice, either by personal delivery or

---

[3]The parish tax sale was conducted on May 18, 2005, by Defendant Stephen W. Prator, Sheriff of Caddo Parish, Louisiana, in his capacity as the Ex-Officio Tax Collector Caddo Parish, Louisiana ("Sheriff Prator"). The city tax sale was conducted on June 10, 2005, by Elizabeth Washington, Director of Finance, City of Shreveport, Louisiana, in her capacity as the Ex-Officio Tax Collector of the City of Shreveport, Louisiana ("Director Washington").

[4]Defendants purchasing Tracts 1 and Tract 2 at the tax sales, referred to as "tax sale purchasers," are Derrell V. Bates, Dubach Land Company, L.L.C., 707 Tax Buyer 04, L.L.C., Boaz Tax Sales Properties, Oxbow Investments, L.L.C., Central Properties/US Bank, Husker Partners/US Bank, Passline Investments, L.L.C., Herice Stewart, Midwest Management/US Bank, Yellowbird Investment, L.L.C., Mooring Tax Asset Group VI, Mooring Tax Asset Group VI, Red Hill Associates, Willow Branch Corporation, Claude A. Dance, Jr., and Vince Lanoue.

mail, prior to the tax sales.  At all times after Trinity One acquired title to Tract 1 and Tract 2, First Louisiana and/or Kilpatrick were the record mortgage holders.  First Louisiana maintained its office in Shreveport, Caddo Parish, Louisiana, and had a registered agent for service of process in the State of Louisiana.  Full information concerning its agent's address for receipt of notice and process was maintained with the Office of the Financial Institutions in and for the State of Louisiana.  Likewise, Kilpatrick maintained its office in Shreveport, Caddo Parish, Louisiana, and had a registered agent for service of process in the State of Louisiana.  Full information concerning its agent's address for receipt of notice and process was maintained with the Commissioner of Insurance in and for the State of Louisiana.

First Louisiana and Kilpatrick brought the present action seeking to have the tax sales of Tract 1 and Tract 2 in 2005, as well as all subsequent tax sales of said property, declared null and void.  They contend the failure to provide actual notice violates their constitutional right of due process.  However, defendants contend that due process does not require actual notice to all parties with a publicly recorded interest and that notice by publication was sufficient under the circumstances.  Moreover, Defendants argue that if actual notice is required, plaintiffs were not entitled to such notice because they failed to avail themselves of the protections provided by La. R.S. §§ 13:3883 and 47:2180.1[5] and failed to take any steps to redeem the property.  The issue is now before the court on a Motion for Summary Judgment. [Record Document 38].  The facts of the case are largely

---

[5]La. R.S. § 47:2180.1 was repealed by the 2008 La. Sess. Law. Serv. Act 819 (H.B. 337) (West).  Nevertheless, the statute was in effect at the time of the tax sales and the filing of the complaint; the court will consider Defendants' arguments accordingly.

undisputed;[6] thus, the sole issue for this court to determine is whether Plaintiffs, as conventional mortgagees, were entitled to notice prior to the tax sales at issue.[7]

## II.   LAW AND ANALYSIS

### A. Summary Judgment Standard

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(c). An issue is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510 (1986). A genuine issue can be resolved only by a trier of fact because it may be resolved in favor of either party. *Id.* at 248-49, 106 S.Ct. 2510. A fact is "material" if it can "affect the outcome of the suit under the governing law." *Id.* Facts that

---

[6] As Defendant Sheriff Prator concedes in his Opposition to the Motion of Summary Judgment:
> All parties agree that the assessed owner of the property received notice of the property taxes due for the calendar year 2004. All parties agree the assessed was given notice of the delinquency of the taxes that were due. All parties agree the assessed owner was given notice of the delinquency of the taxes and failed to take any steps to remedy the delinquency. All parties agree neither First Louisiana Bank nor Kilpatrick Life Insurance Company took any steps to redeem the property or otherwise seek to set aside the tax sale. All parties agree neither First Louisiana Bank nor Kilpatrick Life Insurance Company had requested they be provided notice of the tax delinquency as provided for in La. R.S. 47:2180.1.

[Record Document 55].

[7] The parish tax sales at issue with respect to Tract 1 and Tract 2 occurred on May 18, 2005, May 17, 2006, and May 16, 2005. The city tax sales at issue with respect to Tract 1 and Tract 2 occurred on June 10, 2005, June 7, 2006, and June 6, 2007.

are irrelevant or unnecessary for determination of the suit should not be considered. The substantive law will determine which facts are "material." *Id.*

The burden of proof in a summary judgment proceeding is on the party moving for summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330, 106 S.Ct. 2548, 2556 (1986). When the moving party is a plaintiff, the plaintiff must establish all of the essential elements of his claim showing that he is entitled to judgment as a matter of law. *Fontenoy v. Upjohn Co.*, 780 F.2d 1190 (5th Cir. 1986). If a plaintiff successfully discharges this burden, the burden shifts to the defendant to show that there is a genuine issue of material fact. The defendant "must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial." *Wallace v. Texas Tech. Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996) (citations omitted). The defendant may do this in one of two ways: (1) show there is a genuine issue of fact with respect to one or more of the essential elements of plaintiff's claim, or (2) show there is a genuine issue of fact with respect to an affirmative defense that has been raised. The court is to resolve all reasonable doubts about the facts in favor of the non-movant. *Cooper Tire & Rubber Co. v. Farese*, 423 F.3d 446, 456 (5th Cir. 2005).

Additionally, Local Rule 56.1 requires the moving party to file a statement of material facts as to which it contends there is no genuine issue to be tried. Pursuant to Local Rule 56.2, the party opposing the motion for summary judgment must set forth a "short and concise statement of the material facts as to which there exists a genuine issue to be tried." All material facts set forth in the statement required to be served by the moving party "will be deemed admitted, for purposes of the motion, unless controverted as required by this rule." Local Rule 56.2.

**B.     Due Process Requirements**

In the 1950 case of *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657 (1950), the United States Supreme Court held that "[a]n elementary and fundamental requirement of due process in any proceeding which is to be according finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* The Supreme Court has adhered unwaveringly to the principle that notice by publication is not reasonably calculated to inform interested parties who can be notified by more effective means such as personal service or mailed notice. *See Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 103 S.Ct. 2706 (1983). In *Mennonite,* the Supreme Court held that notice by publication and posting, and notice mailed only to the property owner is insufficient to satisfy the minimum constitutional due process requirements accorded mortgagees:

> Since a mortgagee clearly has a legally protected property interest, he is entitled to notice reasonably calculated to apprise him of a pending tax sale. When the mortgagee is identified in a mortgage that is publicly recorded, constructive notice by publication must be supplemented by notice mailed to the mortgagee's last known available address, or by personal service. But unless the mortgagee is not reasonably identifiable, constructive notice alone does not satisfy the mandate of *Mullane*...
>
> ***
>
> Notice by mail or other means as certain to ensure actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of *any* party, whether unlettered or well versed in commercial practice, if its name and address are reasonably ascertainable.

*Mennonite,* 462 U.S. at 798-800, 103 S.Ct. at 2111-12 (emphasis in original) (internal citation omitted).

Defendants contend that *Mennonite* does not require actual notice "to every party with a publicly recorded interest in property." [Record Document 55, p.4]. Sheriff Prator and Director Washington argue the Fifth Circuit has interpreted *Mullane* and *Mennonite* as requiring a district court to "balance the interest of the State and the individual interest sought to be protected by the Fourteenth Amendment. The focus is on the reasonableness of the balance, and...whether a particular method of notice is reasonable depends upon the particular circumstances." *Tulsa Prof. Collection Serv., Inc. v. Pope,* 485 U.S. 478, 484, 108 S.Ct. 1340, 1344 (1988); *Davis Oil Co. v. Mills*, 873 F.2d 774, 788 (5th Cir. 1989). Thus, defendants argue that, because there are nearly 16,000 parcels of immoveable property on which taxes are due at the time a delinquency notice is provided to the property owner, requiring the Sheriff to search the mortgage records for the names of entities that have a valid mortgage on the subject parcel would be an unreasonable burden.

In support of this argument, Defendant Sheriff Prator cites to *Davis Oil*, in which the Fifth Circuit held that the balance of the State and individual interests in that case did not require actual notice. But *Davis Oil* does not support Sheriff Prator's argument because it did not involve a mortgagee's interest. The distinction between *Davis* and *Mennonite* was recognized in *Security First Nat'l Bank v. Murchison*, 98-1225 (La. App. 3 Cir. 3/17/99), 739 So.2d 803, *writ denied*, 99-1712 (La. 10/15/99), 748 So.2d 1147:

> We find the facts in *Davis* were different. Davis was a mineral lessee who had acquired his interest in the subject land through assignment. The Court found, in Louisiana, it was particularly complex to identify Davis as holder of a mineral interest through a search of the parish conveyance records...
>
> The *Davis Oil* Court was concerned with the sinuous search which had to be performed to identify the particular mineral lessee. From the Court's view, such would require the State to engage in a "potentially fruitless search"... This concern fades, however, when the State has to identify a mortgagee

> who is listed in a publicly recorded mortgage. As opposed to identifying mineral interest holders, the search for the holder of a publicly recorded mortgage requires only the routine examination of the land records...

(internal citations omitted). The Fifth Circuit even recognized in *Davis* that a search for mineral lessees is beyond the "routine examination of land records that was involved in *Mennonite*." *See Davis Oil*, 873 F.2d at 789.

Here, First Louisiana and Kilpatrick recorded their mortgages in the mortgage records of the parish where Tract 1 and Tract 2 are located, so that their interest, as well as their names and addresses, are reasonably (and easily) ascertainable. The burden on Sheriff Prator and Director Washington to use reasonably diligent efforts to ascertain the name and address of mortgagees is not unreasonable, nor is it any different than the burden imposed on the county treasurer in *Mennonite*. A mortgagee has a substantial interest in the property on which a mortgage has been given and is entitled to actual notice, whether by personal delivery or mail, of a pending tax sale. To allow defendants to provide only constructive notice to mortgagees whose name and address are properly recorded would render the *Mullane* and *Mennonite* principles meaningless.

Defendants also contend that Plaintiffs are not entitled to actual notice because they failed to comply with La. R.S. §§ 13:3886 and 47:2180.1 and have further failed to take any steps to redeem their property. Pursuant to La. R.S. § 47:2180.1, "each person holding a properly recorded mortgage on immoveable property for which taxes are delinquent" is entitled to notice that the taxes must be paid within twenty days or the property will be sold according to law. However, the statute provides that notice is required only "if such mortgage holder has notified the tax collector of such recorded mortgage." Similarly, La. R.S. § 13:3886 requires notice to "any persons desiring to be notified of the seizure of

specific immoveable property," but only if a "request for notice of seizure" has been filed in the mortgage records of the parish where the immoveable property is located.

Neither First Louisiana nor Kilpatrick filed such requests. Regardless, Defendants argument fails as the Fifth Circuit has already held, consistent with the United States Constitution, that a State may not, regardless of the circumstances, shift the entire burden of ensuring adequate notice to all persons with an interest in immoveable property. *See Davis, 873 F.2d* at 787 ("A failure to request notice under La. R.S. § 13:3883 does not constitute a waiver of due process."). La. R.S. §§ 13:3886 and 47:2180.1 simply supplement Louisiana's preexisting constructive notice scheme. These provisions merely give "property owners, whose identities a reasonably diligent, responsible state actor could not reasonably ascertain, the opportunity to request such notice and thereby become ascertainable." *Small Engine Shops v. Cascio*, 878 F.2d 883, 893 (5th Cir. 1989). They do not allow the State to dispense with the requirement of providing actual notice to mortgagees who have a properly recorded mortgage. *See Davis*, 873 F.2d at 787; *see also Murchison v. Marzullo*, 97-815 (La. App. 3 Cir. 3/4/98), 705 So.2d 1129-31.

Thus, it is well-settled that actual notice, whether by personal delivery or mail, is a constitutional *minimum* requirement accorded to mortgagees who have a properly recorded mortgage. The failure of Defendants Sheriff Prator and Director Washington to provide such notice to First Louisiana and Kilpatrick requires this court to render, as a matter of law, that the tax sales pertaining to Tract 1 and Tract 2, executed upon Trinity One's failure to pay property taxes, and each and every subsequent tax sale of Tract 1 and Tract 2, to

defendant tax sale purchasers, are absolutely null and void.[8]

### C.  Louisiana Constitution, Article VII, § 25

In their opposition to Plaintiff's Motion for Summary Judgment, Defendants Mooring V and Mooring VI contend that if Defendants Sheriff Prator and Director Washington were required to give actual notice to Plaintiffs, the tax sales cannot be set aside until Plaintiffs pay the redemption amount required by Louisiana law.  Article VII, Section 25(C) of the Louisiana Constitution provides: "No judgment annulling a tax sale shall have effect until the price and all taxes and costs are paid, and until ten percent per annum interest on the amount of the price and taxes paid from date of respective payments are paid to the purchaser."  In *Dockery v. DuPont*, 93-1021 (La. App. 3 Cir. 4/6/94), 635 So.2d 679, 685, the Louisiana Court of Appeal, Third Circuit, held that a trial court erred when it failed to give effect to this constitutional provision.  Before a judgment for annulment of a tax sale can have effect, the plaintiff must pay to the tax sale purchaser the purchase price, all taxes

---

[8]Acknowledging the absence of actual notice, Defendants Mooring V, Mooring VI, 707 Tax Buyer Group, L.L.C, and Director Washington assert that the tax sale purchasers, upon paying the delinquent property taxes, were granted legal mortgages that outrank the conventional mortgages of First Louisiana and Kilpatrick.  This argument is based on La. R.S. § 47:1993(G), which provides:
  G. From the day the roll is recorded in the recorder's office, it shall act as a lien upon each specific piece of real estate thereon assessed, which shall be subject to a legal mortgage after the thirty-first day of December of the current year for the payment of the tax due on it...which mortgage shall prime and outrank all other mortgages, privileges, liens, encumbrances or preferences, except tax rolls of previous years.
Defendants' November 19, 2008 reliance on this statute is flawed.  The legal mortgage referred to in La. R.S. § 47:1993 is granted to the taxing authority for current unpaid taxes, it is not granted to a purchaser at a tax sale.  Moreover, even assuming *arguendo* that tax sale purchasers are granted a legal mortgage which outranks conventional mortgages, a tax sale that is declared null and void does not have any legal effect and cannot create a legal mortgage in favor of any party.

and costs of the sale, together with interest on the amount of the price and taxes paid.  *Id.* at 685; *see also, Lewis v. Succession of Johnson,* 2005-1192, 925 So.2d 1172, n.9 (La. 4/4/06); *Lacoste Builders , L.C. v. Strain*, 2003 WL 22466233 (E.D.La. 2003).

Plaintiffs argue the cases that have required redemption before a judgment of annulment can take effect are not binding on this court, and that it would be unfair to impose this requirement on mortgagees whose due process rights were violated.  *See e.g., Security First Nat'l Bank v. Murchison*, 98-1225 (La. App. 3 Cir. 3/17/99), 739 So.2d 803, *writ denied*, 99-1712 (La. 10/15/99), 748 So.2d 1147 (in order to uphold the United States Constitution, the court refused to apply a peremptive period set forth in the Louisiana Constitution that had the effect of extinguishing a mortgagee's right to sue and thereby annul a defective tax sale).   Plaintiffs argument is unpersuasive.  It is not unfair to ask Plaintiffs to pay the delinquent property taxes that would they would have been required to pay had they received actual notice.  It would be unfair, however, if the tax sales were declared null and void without requiring Plaintiffs to pay any of the delinquent taxes or costs associated with the tax sales, and to put them in a better position than they would have been in had they had received actual notice prior to the tax sales.  While Defendants have undoubtedly violated Plaintiffs due process rights to notice, allowing Plaintiffs to reap such a windfall would not only be unfair, but unjust.  Therefore, the court declares the tax sales at issue to be absolutely null and void, subject to Plaintiffs payment of the redemption price, all taxes and related costs paid by the purchaser subsequent to the tax sale, and ten percent annum interest on the amount of the price and on the taxes paid from the date of the respective payments, to the purchaser, as provided in La. Const. Art. VII, § 25(C).

THUS DONE AND SIGNED in Shreveport, Louisiana, on this 19th day of November,

2008.

                                                                                            _____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE